UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JUELAINE MILLER, KATHLEEN ALBERS,
AND LINDA AULER,

individually and on behalf
of all others similarly situated,

        Plaintiffs,

      v.                               Case No. 15-CV-00506

THEDACARE, INC.
        Defendant.

---

## DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND NOTICE

---

## **INTRODUCTION**

This lawsuit was filed nearly a year ago. Since that time, the parties have engaged in significant discovery, including having exchanged robust written discovery that included ThedaCare's production of over 7,000 pages of documents. (Nickels Dec. ¶2). Both parties have taken numerous depositions, including of all the named Plaintiffs and of ThedaCare's corporate representatives. (Id.) Based on the individualized and disparate experiences of a few employees in a handful of departments, the Plaintiffs seek to certify an incredibly broad FLSA collective class action consisting of all hourly employees who work as direct patient care providers (which definition itself is vague) at any of ThedaCare's seven hospitals, as well as certain employees who are not patient care providers.[1] This overbroad group consists of more

---

[1] Plaintiffs are currently seeking to amend the class definition to include a specific reference to three types of employees who do not provide patient care: registrars, unit resource associates and schedulers.

than 3,000 individuals who work in seven different hospitals, in many different departments, report to many different supervisors and who perform different job duties.

ThedaCare's Breaks and Lunches Policy is, on its face, lawful. The localized implementation of lunch period and timekeeping procedures within each department, together with the myriad differences in the Plaintiffs' subjective experiences of their work settings, renders them dissimilar from one another and from the many other employees they hope to sweep up with their overbroad proposed class. These differences -- readily apparent even among the relatively few departments from which the Plaintiffs hail -- make a collective class action improper. As a result, this Court should deny Plaintiffs' Motion for Conditional FLSA Class Certification.

<u>FACTS</u>

## I. THEDACARE AND ITS MEAL BREAK POLICIES AND PRACTICES

ThedaCare is a non-profit community health system consisting of seven hospitals and numerous clinics that provide medical services to individuals in Northeast Wisconsin. (Wilcox Dep. Tr. 11-12). In ThedaCare's seven hospitals, employees work in dozens of different departments that provide medical services based on patient need (i.e., emergency medicine, surgery, oncology, behavioral health, inpatient/outpatient rehabilitation, birthing and many more). (Wilcox Dec. ¶2). Over the past three years (the maximum potential limitations period in this case), those departments have been managed and supervised by hundreds of different individuals. (Id.)

### A. THEDACARE'S WRITTEN BREAK POLICIES

ThedaCare maintains several system-wide policies that govern employee breaks and work hours. Its "Breaks and Lunches" Policy ("Breaks and Lunches Policy") provides that employees who work at least a 6 hour shift should take a 30 minute unpaid lunch break, and

- 2 -

should take a 15 minute paid break. (Wilcox Ex. 3).[2] For shifts over 6 hours, ThedaCare's time and attendance system automatically deducts 30 minutes from most hourly employees' clockings.[3] (Id.) If an employee is not able to take a full 30 minute lunch, whether because of a shortened break or because the employee received no break at all, he or she is required to report this event by recording a "no lunch" entry into the time system so that the automatic deduction is cancelled and the employee is paid for the full 30 minutes. (Id.) Employees are allowed to leave the premises during their 30 minute unpaid lunch period, but are not allowed to leave the premises during their 15 minute paid break.[4] (Id.) The Breaks and Lunches policy expressly delegates to individual department managers or their designees the responsibility and oversight of managing 30-minute lunches, including the no lunch entry. (Wilcox Dep. Tr. 33-36, Ex. 3).

ThedaCare's "Pay: General Information and Employee Responsibilities" Policy ("Pay Policy") requires employees to accurately record their time worked. (Garvey Ex. 6). The Pay Policy also delegates to managers the responsibility of ensuring that departments and shifts are properly staffed to meet operational requirements and authorizes them to implement department specific practices to determine hours, breaks and lunches. (Id.) Under the Pay Policy, employees are responsible for reviewing their time reports every pay period and to report any

---

[2] All deposition testimony and deposition exhibits are attached to the Declaration of Christopher Nickels, which is filed together with this brief.

[3] ThedaCare's hospital in Shawano does not automatically deduct 30 minutes from employee shifts. Rather, most employees manually punch out and punch in when they take their 30 minute meal periods. (Wilcox Dec. ¶6).

[4] As explained below, Plaintiffs improperly conflate the provisions in the Breaks and Lunches relating to 30 minute meals periods (where employees are permitted to leave the premise) with those relating to 15 minute break periods (where they are not). This blatant misreading of the policy is entirely inappropriate because named Plaintiff Miller conceded this was not how she read the policy, and because several of the other named Plaintiffs conceded they did not even read the policy at all, so they certainly could not have relied on it in forming a belief as to whether they could or could not leave the premises. Additionally, the evidence establishes that employees do leave the premises during their breaks. Regardless, the FLSA does not require that employees be permitted to leave the premises in order for a meal break to be unpaid.

QB\38791043.3

errors to their supervisors or designated payroll person by noon on the Monday following the close of the pay period. (Id.)

ThedaCare thus delegates significant discretion to department specific managers and their designees to determine proper staffing on various shifts (e.g., day shifts, evening shifts or night shifts), to make operational determination as to how employees are to perform their duties (like whether to carry a portable communication device), and to determine the processes for ensuring coverage and the continuity of care where employees take their lunch breaks.

### B. THEDACARE TRAINS EMPLOYEES ON ITS TIME KEEPING SYSTEMS

ThedaCare trains newly hired employees on its time keeping systems during orientation, including how to use the no lunch entry. (Garvey Dep. Tr. 32-33, Ex. 9). Individual managers and supervisors train new employees on their department's specific lunch and break practices and expectations. (Wilcox Dep. Tr. 50-56). Managers and supervisors routinely communicate with their employees as to their department's lunch break practices. (Younger Crandall Dec. ¶2-4; Bardon Dec. ¶3-7). ThedaCare's policies, including the Breaks and Lunches Policy and Pay Policy, are available to employees on the company's internal website, which it refers to as Heartbeat. (Wilcox Dep. Tr. 53-54).

ThedaCare's Human Resources managers routinely attend training on FLSA and related wage and hour issues. (Wilcox Dep. Tr. 10-11). In 2012, ThedaCare trained its managers and supervisors on federal (FLSA) and Wisconsin state wage and hour requirements relating to lunch breaks, so that they understood the law and to make sure that managers and supervisors were appropriately implementing and administering expectations and practices regarding lunch breaks. (Wilcox Dep. Tr. 58-59). In 2015, ThedaCare made several announcements about accessing corporate policies and implemented required training to ensure employees understood how to access the company's human resources policies. (Wilcox Dec. ¶3).

- 4 -

## II.    VARIED EXPERIENCES OF THE NAMED AND OPT-IN PLAINTIFFS

There are three named Plaintiffs in this lawsuit.  In addition, 19 other individuals have consented to join as FLSA opt-in Plaintiffs.  Together, these Plaintiffs primarily work or worked in ThedaCare's Neenah Emergency Department, its Neenah Staffing Resources Department or its Neenah Birth Center.[5]  (See Declarations of Named and Opt-in Plaintiffs, Dkt Nos. 34-47). Department level practices in these small handful of departments -- much less all departments in all of ThedaCare's seven hospitals -- reveal significant disparities in terms of managers, job duties, staffing, location of taking lunches, carrying of communications devices, and, significantly, individual employee's subjective experiences and choices related to the exercise of lunches and utilization of the no lunch punch procedure.  These disparities demonstrate there is no common unlawful policy or practice at ThedaCare such that this case is appropriate for class certification or could be manageable as a class.

### A.    NAMED PLAINTIFF JUELAINE MILLER

Juelaine Miller ("Miller"), who initiated this lawsuit, has worked as an Emergency Department ("ED") paramedic at ThedaCare's Neenah, Wisconsin hospital since 1999 and has worked several shifts in the ED at ThedaCare's Appleton, Wisconsin hospital.  (Miller Dep. Tr. at 14, 38-39).  Paramedics in the Neenah ED are responsible for taking patient vitals, providing medications, providing life support or obtaining equipment.  (Miller Dep. Tr. at 14).  These paramedics work in the ED, they do not travel on ambulances.  (Miller Dep. Tr. at 71). Paramedics in the Neenah ED do not carry any portable communication devices (such as a beeper or zone phone) and they work collaboratively with Registered Nurses ("RNs") in

---

[5] One opt-in Plaintiff, Cindi Zenz ("Zenz"), worked at an internal medicine clinic in Appleton.  Plaintiffs' counsel has represented that she is not a proper member of the class but has taken no steps to withdraw her consent.  Zenz worked at a clinic and therefore does not meet the proposed class definition, which includes only hospitals.  (Nickels Dec. ¶8).

QB\38791043.3

delivering care to patients. (Miller Dep. Tr. 27-35, 41-43) Paramedics in the Neenah ED are assigned to one of three areas (trauma, acute and specialty) where they are assigned to work with one or two nurses to cover the thirteen patient rooms. (Id.) ThedaCare employs paramedics in its Neenah and Appleton EDs, but in no other department within its system. (Wilcox Dec. ¶4).

For the time period relevant to this action, Mary Ann Bashaw ("Bashaw") managed the Neenah ED until February 2013. Thereafter, Jen Fredriksen ("Fredriksen"), became the manager of the Neenah ED and has held that position since taking over in September of 2013. In the interim (February - September 2013), Supervisor Mike Huntley ("Huntley") served as the interim manager. (Wilcox Dec. ¶5).

Miller testified during her deposition that she understands that she is expected to take a 30-minute lunch break when her work load permits, and that she has taken 30 minute lunches. (Miller Dep. Tr. 44-48). Paramedics in the Neenah ED do not need permission to take a 30 minute lunch. Rather, they determine when is a good time to take a lunch based on patient load and by coordinating with the RNs assigned to their patients. (Id.) When Miller does take lunches, she typically does so in the break room that is located outside of the ER. There is also a cafeteria available, but Miller chooses not to utilize it. (Miller Dep. Tr. 55-67). During lunches, Miller eats food, watches TV, socializes with others, and engages in things like taking personal phone calls. (Id.) The break room in which Miller chooses to take her lunch has a call light. Paramedics are not required to respond to the call light while on their lunch, however, Miller often chooses to do so because she finds the call light to be annoying. (Id.) Miller acknowledges that paramedics are permitted to leave the premises during their 30 minute lunches. (Id.)

Miller says that she often cuts her 30 minute lunch short -- not because any manager or supervisor told her to return to work -- but because she feels she is needed on the floor. (Miller

QB\38791043.3

Dep. Tr. 67-68).  Miller acknowledges that other paramedics or RNs are available to cover for her while she is on lunch.  (Id.)  Miller understands that the no lunch code is available to her when she does not receive a lunch of at least 30 minutes.  (Id. 69-70).  Miller says that at times she uses the no lunch code when she does not get a 30 minute lunch, but she noted that her use of the no lunch code has differed based on her manager.  Specifically, Miller testified that she has used the no lunch code during the time she has been supervised by Fredriksen, but did not use it under Bashaw.  (Id. 50-53, 89-91).  Miller says she was very cautious about punching no lunch while the Neenah ED was managed by Bashaw because Miller did not want to be confronted by Bashaw about the reason why Miller was not able to take a full 30 minute lunch.  (Id. 50-53, 83-87).  Miller acknowledges that Fredriksen has not discouraged her from using the no lunch and that Fredriksen has never taken away a no lunch punch.  (Id. 53-54).  Miller believes that Bashaw had "taken away" other employees no lunch punches, but she could not confirm that Bashaw had ever taken away one of Miller's no lunch punches.  (Id. 50-53, 90-92).  Miller stated that no one at the Appleton ED discouraged her from using the no lunch entry.  (Id. 85)

Other employees experiences in the Neenah ED have been different from Millers' experience.  For example, Neenah ED paramedic Jason Selwitschka ("Selwitschka") stated that his managers and supervisors (including both Bashaw and Fredriksen) encourage and expect paramedics to take 30 minute lunches.  (Selwitchka Dec. ¶11-12).  Selwitschka takes 30 minute lunches when he can and if he cannot, he uses ThedaCare's no lunch punch, both when the ED was managed by Bashaw and now by Fredriksen; he says that no supervisor or manager has reversed a no lunch punch he placed into the time keeping system.  (Id. ¶6-10).  He also knows that he can leave the premises during his 30 minute lunch, he has done so and, he is aware of other Neenah ED employees who have also left the premises during their lunches.  (Id. ¶14-15).

QB\38791043.3

### B.    NAMED PLAINTIFFS LINDA AULER AND KATHLEEN ALBERS

Linda Auler ("Auler") and Kathleen Albers ("Albers") are the other two named Plaintiffs in this lawsuit. Auler has worked as a registrar in the Neenah ED for twenty years. (Auler Dep. Tr. 8-9). Albers has worked in the Neenah ED as a registrar since 2005 and she has also worked as a Unit Resource Associate ("URA").[6] (Albers Dep. Tr. 10-12). Registrars were previously referred to as "administrative assistants."[7]

Registrars greet patients who come to the ED seeking medical care. They are responsible for registering the patient by gathering biographical information and putting that information into ThedaCare's patient information systems. (Auler Dep. Tr. 9-10; Albers Dep. Tr. 24-25). In the Neenah ED, two registrars typically work together during day shifts and are supposed to cover for one another. (Auler Dep. Tr. 19-21). One registrar works in the ED lobby area (the "front" registrar), and the other works within the department (the "back" registrar). The duties are the same. The front registrar has no access to a portable communication device. (Auler Dep. Tr. 23-27; Albers Dep. Tr. 31-32). The back registrar has access to a zone phone so that she can communicate with the front registrar if necessary, but is not required to and rarely carries it. (Id.) Registrars provide no medical care to patients. (Auler Dep. Tr. 11).

URAs manage patient flow by ensuring ED patients are placed into the correct room, coordinating with physicians and nurses, and by placing orders for medical imaging or other treatment. (Albers. Dep. Tr. 26-27). One URA is scheduled per shift in the Neenah ED. (Id. 36-37). URAs in the Neenah ED do not carry portable communication devices and URAs do not provide medical care directly to ThedaCare patients. (Id. 25, 31-32).

---

[6] Albers worked some shifts in the Appleton Emergency Department, however, those shifts were all less than four hours and therefore not eligible for a 30 minute meal break. (Albers Dep. Tr. 12-13, 60).

[7] The two terms are interchangeable for the purposes of this lawsuit. (Auler Dep. Tr. 8).

QB\38791043.3

Despite having worked for ThedaCare for twenty years, Auler has never reviewed ThedaCare's Breaks and Lunches Policy. (Auler Dep. Tr. 28-29). When Auler wants a break, she coordinates with the other registrars and she will eat food in the Neenah ED's break room where she chats with other people and watches TV. (Id. 35-39). Auler states that she almost never takes a full 30 minute lunch period, but she admits that no manager or supervisor is telling her to come off of her lunch. (Id. 42-45). Instead, Auler makes her own personal assessment as to the needs of the department and then chooses to come off her lunch early. (Id. Tr. 41-48). Auler is aware of the no lunch code and uses it when she does not get a full 30 minute uninterrupted lunch. (Id. 48-51). In some situations where Auler cuts her 30 minute lunch short, she nonetheless feels that her break was "substantial," and then chooses to not use the no lunch punch, and she does not report anything to her managers or supervisors. (Id. 94-96). Other than using the no lunch punch, Auler does not report to her managers or supervisors when she misses a break or chooses to take a shortened break. (Id. 48).

Auler states that she has no problems using the no lunch code under Fredriksen's management but, like Miller, Auler says that it was different under Bashaw because Bashaw would ask her to provide the reason why she was unable to take a full 30 minute lunch. (Auler Dep. Tr. 52-59). Auler admits that Bashaw never reversed any of her no lunch punches and that she has never been disciplined for using the no lunch punch. (Id.)

Albers acknowledged that she had not read ThedaCare's Breaks and Lunches Policy until shortly before her deposition in November 2015. (Albers Dep. Tr. 41). Albers is aware of ThedaCare's expectation that she should take a 30 minute lunch but frequently does not do so. (Id. 29, 39, 56-57). She states that she chooses to shorten her lunch periods, not because she has

been instructed to, but because she believes she is needed to do her job. (Id.)  Albers is aware that others that have left the premises during their 30 minute lunch periods. (Id. 59).

Albers has never complained to her supervisors or managers about not receiving a full 30 minute lunch, and she has never asked any questions about the Neenah EDs lunch policies or practices. (Albers Dep. Tr. 41, 63).  Although Albers has been aware of the no lunch punch, she did not start using it until April 2015, after speaking with her lawyers in this lawsuit. (Albers Dep. Tr. 42-53, 58-59, 66-67).  Albers stated that she did not previously use the no lunch punch because she did not want to confront the prior manager, Bashaw. (Id.)  Since Albers started using the no lunch punch in April 2015, none of her supervisors have complained. (Id.)  Albers believed that Bashaw would have "taken away" a no lunch if she tried to use it, even though Bashaw told Albers that she should be taking a 30 minute lunch, and where Bashaw never told Albers that she could not use the no lunch punch. (Id.)  Albers is not aware of Bashaw ever having taken a no lunch punch away from her. (Id.)

Albers acknowledged that on shifts where she worked as a register alone (i.e., evening shifts), ThedaCare automatically cancelled the 30 minute deduction. (Albers Dep. Tr. 72-73).  When working in groups of two, Albers' co-workers have complained that Albers does not make herself available to enable lunches for her co-workers. (Id. 64-65).

### C. OTHER EMPLOYEES IN THE NEENAH EMERGENCY DEPARTMENT

Based on the subjective experiences of only the three named Plaintiffs, it is evident that their individual experiences -- not any common policy or practice -- are highly relevant to their allegations.  Indeed, all three named Plaintiffs admit that they can currently take a 30 minute lunch or use the no lunch punch.  However, as the Plaintiffs seek to certify a class of all employees in the Neenah ED (and many more employees from many other departments), the experiences of others in the Neenah ED are relevant.

- 10 -

Jackilyn Mickelson ("Mickelson") has worked as a URA in the Neenah ED since 2010 and Mariya Rohloff ("Rohloff") has worked as a URA in the Neenah ED since 2004. (Mickelson Dec. ¶2; Rohloff Dec. ¶2). They take their 30 minute lunches, and they work collaboratively with the Lead RNs or a registrar to cover their responsibilities. (Mickelson Dec. ¶6-7; Rohloff Dec. ¶6-7). They both report that some Lead RNs are better than others at facilitating their lunches and that it can depend on which registrar is working in terms of whether that person is willing to cover for them during a lunch. (Id. ¶6) Sometimes Fredriksen, other supervisors or the Nurse Educator cover for them while they take a 30 minute lunch. (Id.) During Mickelson's 30 minute lunch, she eats food, uses her cell phone, checks the internet, engages in other personal activities and has seen others do so as well. (Mickelson Dec. ¶7). When Mickelson or Rohloff do not get a lunch or if it gets cut short, they use the no lunch code and are paid for the full amount of time. (Mickelson Dec. ¶8-9; Rohloff ¶8). Mickelson says that the prior ED manager, Bashaw, would sometimes e-mail her asking why she was not able to take her 30 minute lunch. (Mickelson. ¶10). In those instances, Mickelson would explain why shed did not get a lunch to Bashaw and she continued to use the no lunch code at her discretion. (Id.) When working night shifts as a URA, Mickelson and Rohloff used the no lunch code on every single shift because there was less staff available to cover for them. (Mickelson Dec. ¶11; Rohloff ¶10). They know they can leave the premises during their 30 minute lunches, and have done so to, for example, to pick up prescription medicine. (Mickelson Dec. ¶14; Rohloff ¶13).

Christine Loughrin ("Loughrin") has worked as a Lead RN in the Neenah Emergency Department since 2006. (Loughrin Dec. ¶2). She takes her 30 minute lunches, and when she does, she eats food, checks her cell phone and/or uses the internet. (Id. ¶2, 5-7). She coordinates with other ED employees to determine when to take her lunch, and as Lead RN, she facilitates

when others should take their lunches. (Id. ¶6). Her supervisors and the Nurse Educator help cover for Loughrin while she takes her 30 minute lunches. (Id.) When she is not able to get a 30 minute lunch, she uses the no lunch code and instructs other employees in the Neenah ED to do the same. (Id. ¶8-9). She knows that she and other employees can leave the premises during their 30 minute lunches, so long as they clock out on the hospital timekeeping system. (Id. ¶13).

Thus, many employees, including the named Plaintiffs, understand the Neenah ED's lunch break expectations and practices, although their experiences differ based on their assessment of their workload, and how they perceive their managers.

### D. THE STAFFING RESOURCES DEPARTMENT

Several opt-in Plaintiffs work in the Staffing Resources department, where the work environment differs significantly from employees who work in the Neenah ED and other patient-facing departments. Judy Knox ("Knox") manages Staffing Resources and Stephanie Decker ("Decker") is the department supervisor. Decker reports to Knox. (Knox Dec. ¶2). Employees who work as "schedulers" in Staffing Resources perform two different roles: they are responsible for creating and inputting the staff schedules six weeks in advance, or they handle day-to-day department staffing needs when employees call in sick or where there is a specific need for staff. (Id. ¶3). On a given shift, two schedulers could be working on the six week schedule while 1-2 other schedulers handle the day-to-day staffing management. (Id. ¶4). Staffing Resources is an office environment -- it is located on the 4th floor of the Neenah hospital (the ED is located on the 1st floor) and no Staffing Resources employee provides patient care or even interacts with patients. (Id. ¶5). They do not carry portable communication devices. (Id. ¶6). Staffing Resources employees are expected to take a 30 minute unpaid lunch and to use the no lunch punch if they do not receive a full 30 minute lunch. (Id. ¶7).

While the workload can get busy from time-to-time, there is almost no reason why schedulers who are performing the six week scheduling duties should miss or interrupt their 30 minute meal period. (Id. ¶8). It simply is not emergency work. (Id.) The schedulers who handle the day-to-day staffing might feel pressure to miss or shorten a meal period because their work relates to a more immediate need of the hospital, but if they do in fact miss or shorten their 30 minute lunch, they are to avail themselves of the no lunch punch so that they are paid for all time worked. (Id. ¶9). Knox and Decker have never disciplined anyone for using the no lunch punch and they have never reversed a no lunch punch. (Id. ¶10). Knox and Decker have counseled schedulers about the importance of taking their breaks. (Id.) No scheduler has complained to Knox or Decker about not being able to take their 30 minute lunch. (Id.)

In Fall of 2015, ThedaCare created a new break area in the Staffing Resources Department that is available to schedulers so that they can take their breaks and lunches. (Id. ¶11). ThedaCare did this because it recognized that too many schedulers were taking their lunches close to their work area, a practice that was discouraged because of the potential for employees to interrupt their lunch. (Id.) Of course, ThedaCare's cafeteria has always been available to schedulers who wish to purchase food and take their lunch in the cafeteria. (Id.).

E. THE NEENAH FAMILY BIRTH CARE DEPARTMENT

Several RNs who worked in ThedaCare's Neenah Family Birth Care department ("Birth Center") have opted-into this lawsuit. They allege that worked through lunch periods for reasons that are very different from other departments and very specific to their own: they sometimes use laptop computers to monitor baby heartbeats during a break. (See Bilke Dec. (Dkt. 35) ¶9; Jaeger Dec. (Dkt. 36) ¶8; Neuman Dec. (Dkt. 39) ¶8; Tyynismaa Dec. (Dkt. 45) ¶8; Wood Dec. (Dkt. 46) ¶8). Not only does this differentiate them from other RNs (and the many other

- 13 -

positions for which the Plaintiffs seek certification), but the Neenah Birth Center has its own unique system for tracking 30 minute lunches.

Amy Bardon ("Bardon") has managed the Neenah Birth Center since January 2014. (Bardon Dec. ¶1-2). Prior to that Fredriksen managed the Neenah Birth Center. (Id.) The Neenah Birth Center permits and encourages employees to take their 30 minute lunch period and to use the no lunch entry if they do not. (Id. ¶3). At the beginning of each shift, employees are paired with two buddies with whom they are to provide coverage for one another, including during 30 minute lunch periods. (Id. ¶4). Bardon coaches employees to hand off their zone phones and their laptop computers during their 30 minute lunches. (Id. ¶5). Responding to a January 2015 employee satisfaction survey, in which some employees noted their concern about not getting 30 minute lunches, Bardon initiated a "Lunch Tracking Tool," which is posted in the department and requires employees to write down whether or not they receive their 30 minute lunch. (Id. ¶6). Employees who do not get a 30 minute lunch are instructed to use the no lunch punch; if they fail to enter a no lunch, the Birth Center supervisor enters one for them (and emails the employee to confirm this is accurate).[8] (Id. ¶7). Bardon also instructs employees that they can leave the premises during their 30 minute lunches. (Id. ¶8). As recent as January 2016, Bardon provided this instruction to Diane Tyynismaa, who is one of the opt-in Plaintiffs. (Id.)

## F. THE APPLETON EMERGENCY DEPARTMENT

A number of the Plaintiffs worked secondary shifts in the Emergency Department in ThedaCare's Appleton Hospital. Ann Younger Crandall is the current manager of the Appleton ED. (Younger Crandall Dec. ¶1-2). She instructs her staff of RNs, paramedics, nursing assistants, URAs and registrars on ThedaCare's expectation that employees take a 30 minute

---

[8] This certainly calls into question the conclusory allegations made by RNs in the Birth Center that they were "discouraged" from using the no lunch entry, where there supervisor not only encouraged the no lunch but was doing it for them.

QB\38791043.3

lunch and to use the no lunch punch if they do not receive the full 30 minutes. (Id. ¶2). Unlike

in the Neenah ED, RNs, paramedics and nursing assistants in the Appleton ED do carry zone

phones, however Crandall coaches them on her expectation to hand off their phones during their

lunch. (Id. ¶3). Examples of manager communications reminding Appleton ED employees of

their lunch obligations include (Id. ¶4):

| Date | Communication |
|------|---------------|
| May 2013 | Staff meeting to employees reminding them to provide coverage for one another during 30 minute meal periods, that the meal period needs to be uninterrupted, that employees must hand off their phones, that employees must use the no lunch entry if they do not get lunch and that they should ask questions of their Lead RN. |
| May 2013 | Weekly newsletter reminding staff to coordinate 30 minute lunches with their care team to ensure that they are taken, noting that patient handoff is imperative for staff to have an uninterrupted lunch, and instructing staff to speak with Lead RNs if they have questions. |
| January 2014 | Weekly newsletter reminding staff that lunch breaks are expected, that staff must coordinate with their care teams and that staff should let the Lead RN know when they get their lunch so that the Lead RN can continue to monitor the flow of the department. |
| April 2015 | Weekly newsletter reminding staff to use the no lunch code if they do not receive a 30 minute lunch and to enter their Lead RNs initials. |
| June 2015 | Instructing staff that they are responsible for punching no lunch and to email Jill and the Lead RN if they forget to do so. |

Employees understood this and followed the Appleton ED lunch break protocol. For

example, Kasey Koch ("Koch") works as a paramedic in the Appleton ED where he, like other

paramedics, is responsible for providing medical care to patients under the direction of the

Appleton ED physicians. (Koch Dec. at ¶2-3). Unlike in Neenah, there is only one paramedic

scheduled per shift and that individual is therefore not assigned to specific patients. (Id. ¶7).

Paramedics in the Appleton ED coordinate with their Lead RN in determining a proper time to

- 15 -

take their 30 minute lunch. (Id. ¶5-7). There are two break rooms near the ED, and Koch often chooses to take his 30 minute lunch in the quieter of the two break rooms which has no call light. (Id. ¶8). During his lunch he eats food, uses his cell phone, checks the internet, engages in other personal activities and observes other ED employees doing the same thing. (Id.) When work needs prevents Koch from taking a 30 minute lunch period, he will try to take a 30 minute lunch later in his shift or he will use the no lunch code. (Id. ¶9-14).

Jennifer Blattner ("Blattner") works as a staff RN and as a lead RN in the Appleton ED. (Blattner Dec. at ¶2). As a Lead RN she is responsible for overseeing daily clinical activities in the ED, including by coordinating with the ED staff employees to ensure they will be able to perform their job and meet patient needs. (Id. ¶3). She takes her 30 minute lunch and works collaboratively with other nurses and medical staff employees to ensure coverage is available so that they too may take their lunch breaks, and she uses the no lunch entry when she does not get a full 30 minute lunch. (Id. ¶5-12). When Blattner works as Lead RN, she draws up a list of ED staff employees on duty and crosses each one off when they get their lunch. (Id. ¶6). She knows she can leave the premises for her 30 minute lunch break if she chooses, but practically speaking, 30 minutes is not much time to leave the hospital, obtain food and return. (Id. ¶14-16).

## ARGUMENT

## I.     LEGAL STANDARD

Section 216(b) of the FLSA authorizes employees to bring collective actions to recover unpaid overtime compensation on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). In determining whether employees are "similarly situated," courts typically -- but are not required -- to apply a two-stage process. *See Martinez v. Regency Janitorial Services.*, 2012 WL. 252230, at *1 (E.D. Wis. January 26, 2012). In an unpaid meal break case like this one, the first step requires the court to determine whether the named Plaintiffs have

- 16 -

made a "modest factual showing" that they and potential class members were victims of a common policy or plan that violated the law. *See Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014). "The critical inquiry in determining whether a Court should exercise its discretion to authorize the sending of notice to potential Plaintiffs is whether the representative Plaintiff has shown that she is similarly situated to the potential class Plaintiffs." *Austin v. Cuna Mut., Ins. Cos.,* 232 F.R.D. 601, 605 (W.D. Wis. 2006).

Where some discovery has been conducted, it is appropriate for the Court to apply a higher level of review. *Boelk v. AT&T Telaholdings, Inc.*, 2013 WL 261265, at *14 (W.D. Wis. January 10, 2013) (applying a higher level of review where the parties had exchanged written discovery and where the named plaintiffs and corporate representative had been deposed); *Hawkins v. Alorica, Inc.*, 2012 WL 4391095 (S.D. Ind. Sept. 25, 2012) (appropriate to apply more scrutiny to plaintiffs' claim at conditional certification stage where significant discovery has been done but was not yet complete). In assessing plaintiffs' claims regarding similarity, courts in the Seventh Circuit have repeatedly noted they are not required to accept the Plaintiffs' allegations as true and will consider contrary evidence. *See, e.g., Martinez*, 2012 WL 252230 at *1 (E.D. Wis. January 26, 2012) ("While the Court need not resolve substantive merits of the Plaintiffs' claim at this preliminary stage, the Court is not required to accept the Plaintiffs' allegations as true."); *Howard v. Securitas Sec. Servs.*, U.S., 2009 WL 140126 (N.D. Illinois January 20, 2009) ("In making a determination as to similarity, the Court need not accept the Plaintiffs' allegations as true as it would with a motion to dismiss.").

## II.     THEDACARE'S BREAKS AND LUNCHES POLICY IS LAWFUL

Plaintiffs fail to establish that they are victims of a *common* policy or plan, or one that *violated the law*. Plaintiffs' hook for Rule 216(b) certification rests largely on ThedaCare's Breaks and Lunches policy. Specifically, Plaintiffs argue that ThedaCare's policy places

- 17 -

common restrictions on employees during their lunches such that they were "on duty," and that the policy impermissibly shifts the burden of tracking time to employees. These arguments fail.

First, ThedaCare's policy of taking an automatic thirty minute pay deduction does not violate the FLSA and does not provide a basis for certification of an FLSA class. *Fengler v. Crouse Health Foundation, Inc.*, 595 F. Supp. 2d 189, 195 (N.D.N.Y 2009) ("[T]he mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA."); *Brabazon v. Aurora Health Care, Inc.*, 2011 WL 1131097, at *3 (E.D. Wis. Mar. 28, 2011) (the existence and implementation of a practice of making automatic deductions for scheduled meal breaks in and of itself is not "sufficient as a common denominator to permit a collective action").

Second, Plaintiffs' argument that the Breaks and Lunches policy places unlawful common restrictions on employees improperly conflates those portions of the policy relating to 15 minute *paid breaks* with those relating 30 minute *unpaid lunches*. Plaintiffs' argument is not supported by the evidence and is not consistent with the plain language of the document. Indeed, the policy is titled "Breaks" and "Lunches," and it uses the word "break" when referring to 15 minute paid breaks and the word "lunch" when referring to 30 minute lunch periods. (Wilcox Dep. Tr. 39-43; Wilcox Ex. 3). Plaintiffs' effort to conflate these two provisions is not consistent with the plain language of policy, and it is contradicted by the Plaintiffs' own testimony.

Specifically, Plaintiffs allege that language from the second paragraph of the Breaks and Lunches policy restricts where employees may take breaks (i.e., that breaks must be taken in their department or cafeteria), and that it prohibits employees from leaving the premises during breaks. (Plaintiffs' Brief, Dkt. 32 at p.1-2, 6-7, 20). As an initial matter, the FLSA does not require that employees be permitted to "leave the premises" in order for a 30 minute lunch period

- 18 -

to be unpaid (this issue is discussed in Section V below). Nonetheless, the second paragraph of the policy is unequivocally addressing 15 minute paid breaks, not 30 minute unpaid lunch periods. ThedaCare can place any type of restriction it sees fit on paid breaks because they are paid time. In Plaintiffs' misreading, they blindly ignore the fifth paragraph of the policy, which states "employees are not required to record the lunch period if they remain on the premises. However, if an employee leaves the premises, the lunch period must be recorded using the appropriate record keeping method for the site." (Wilcox Ex. 3). Thus, employees are clearly permitted to leave the premises during their 30 minute unpaid lunches, which is confirmed by the many employees who understood this and have in fact left the premises. (See p.7, 10-12). Plaintiffs language/context argument is further undermined by the fact that most of the named Plaintiffs admitted they had not even read ThedaCare's Breaks and Lunches Policy, and, therefore, surely could not have relied upon something they had not read in deciding how or where to spend their lunch periods. (Auler Dep. Tr. 28-29; Albers Dep. Tr. 41). Miller herself acknowledged that employees could leave the premises, which is consistent with the statements of others. (Miller 66, 105-106, 121-122).

Third, building upon the Plaintiffs' flawed and incorrect reading of ThedaCare's Breaks and Lunches Policy, Plaintiffs assert they were effectively "on duty" during their meal periods. (Plaintiff's Brief 18-21). This argument fails at the outset because it rests entirely upon their unsupported and fictional reading of the policy, as described above. It also fails because employees are permitted and do in fact enjoy their meal periods. (See p.10-12, 14-17 above). The Seventh Circuit has adopted the "predominant benefit" test for determining whether meal periods constitute compensable work time under the FLSA. *Leahy v. City of Chicago*, 96 F.3d 228, n.2 (7th Cir. 1996); *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir. 1993). Under

- 19 -

the predominate benefit test, an employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the employer. *Leahy*, 96 F.3d at n.2. If during meal periods an employee's "time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then [the employee] is completely relieved from duty and is not entitled to compensation under the FLSA." *Id.*

Here, the evidence shows that when employees take a 30 minute lunch period, they are eating food, checking the internet and socializing. (See p.11-12, 14-17 above). This is a non-compensable meal break under the FLSA. Further, while there is no uniform policy requiring all hourly employees at ThedaCare hospitals be subject to recall during their lunch, even if there were, simply being "on call" during a meal period is not compensable. *See Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001) (holding that under the predominate benefit test, simply being on-call is not compensable work for the purpose of the FLSA); *Roy v. Cnty. of Lexington, South Carolina*, 141 F.3d 533, 545 (4th Cir. 1998) (affirming a lower court ruling that emergency response employees were not entitled to compensation during meal periods where they "had no official responsibilities during this period of time other than to respond to an emergency if called upon."). There is no common policy, across the entire ThedaCare organization, that deprives employees of the opportunity to relax and eat food during their meal period and thus there is no basis to certify the proposed class. *See Zavala v. Wal-Mart Stores, Inc.*, 03-cv-05309, 2010 WL 2652510, at *3 (D.N.J. June 25, 2010) *aff'd sub nom. Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) ("Allegations of overarching policies are generally insufficient to establish that individual workers are similarly situated.").

- 20 -

Fourth, ThedaCare's policy does not impermissibly shift the burden of tracking time to employees. It is black letter law that an employer may establish a reasonable process for employees to report uncompensated work time -- such as a no lunch procedure -- and that the employer is not liable for non-payment if the employee fails to follow the established process. *White v. Baptist Mem. Health Care Corp., et al.*, 699 F.3d 869, 876 (6th Cir. 2012). Employees who do not follow reasonable time reporting procedures prevent their employer from knowing of its obligation to compensate the employee and thereby thwart their employer's ability to comply with the FLSA. *White*, 699 F.3d 869, 876; *Hertz v. Woodbury County*, 566 F.3d 775, 781-82 (8th Cir.2009); *Newton v. City of Henderson*, 47 F.3d 746, 749-50 (5th Cir.1995). ThedaCare's Breaks and Lunches Policy does not provide any common factual nexus that could warrant certification of a class because it <u>requires</u> employees to report uncompensated time. See *Cason v. Vibra Healthcare,* 2011 WL 1659381 (E.D. Mich. May 3, 2011) (denying conditional certification sought by health care workers who alleged that they regularly worked through their meal breaks where employer's policies required them to inform management of missed or interrupted meal periods).

## III. PLAINTIFFS ARE NOT SIMILARLY SITUATED TO THE PROPOSED OVERBROAD CLASS

As established in the factual discussion above, the actual experiences of the named Plaintiffs and the opt-in Plaintiffs vary widely depending on their job duties, department, manager, department specific meal break practices and their own subjective interpretation of their supervisor's directive. These differences demonstrate that the Plaintiffs are not similarly situated to the thousands of employees they seek to include in their overbroad class. *Accord Bolden v. Walsh Construction Company*, 688 F.3d 839, 896 (7th Circuit 2012) (cases in which department managers use their given discretion to make individual decisions without guidance

from an overarching company policy do not satisfy commonality requirement under Fed.R.Civ.P. 23 because the evidence varies from plaintiff to plaintiff).

## A. COURTS ROUTINELY DENY CONDITIONAL CERTIFICATION WHERE THERE IS NO EVIDENCE OF A COMMON UNLAWFUL POLICY OR PRACTICE

In *Blaney v. Charlotte-Mecklenburg Hospital Authority*, 2011 WL4351631 (W.D. N.C. Sept. 16, 2011), the Western District of North Carolina denied conditional certification in a meal break class action filed by nurses and nursing assistants. There, the hospital system delegated to individual departments and managers the decisions on how to supervise staff and administer policies relating to meal break periods. The court found that there was no common policy where there were department level differences in carrying portable communication devices, differences in how meal breaks were scheduled, differences in how employees covered for one another during meal breaks, and differences in how to account for missed meal periods. *Id*. at *6-11.

In *Boelk v. AT&T Telaholdings, Inc.*, 2013 WL 261265 (W.D. Wis. January 10, 2013), the Western District of Wisconsin denied conditional certification sought by a proposed class of AT&T field technicians who alleged that their employer imposed restrictions on their breaks such that they should have been compensated. The court noted that nothing in Wisconsin or Federal law supports the proposition that employers must pay employees for meal breaks simply because the employee is restricted in what he can do during the break. *Id*. at *9. Although the plaintiffs' declarations stated that they often worked through meal breaks, it was clear from the plaintiffs' deposition testimony that the reason for doing so depended on the circumstances, which varied on a day-to-day basis. *Id*. at *12. Whether technicians decided to work through meal breaks depended on several factors including the volume of work and the technician's individual needs and desires. "Whether a technician felt rushed in completing jobs or pressure from the performance scoring ranking system depended on the size of the territory to which the

technician was assigned, the number of technicians available to cover the territory, the type of job assigned, the technician's experience and supervisor's varying expectations. In light of these variables, the common questions central to Plaintiff's claim could not be resolved in a class-wide basis." *Id.* at *12.

In *Martinez v. Regency Janitorial Services*, 2012 WL 252230 (E.D. Wis. January 26, 2012), this court denied conditional certification to a putative class of janitors who alleged they "never received a full thirty minutes of uninterrupted, unpaid lunch break." *Id.* at *4. In denying the plaintiffs' motion for conditional certification, this court found the plaintiffs' allegations about working through breaks amounted to no more than comments about certain supervisors at certain worksites, thus there was no common policy. *Id.* This court held that "alleged violations that are isolated to specific locations or supervisors are generally insufficient for a company wide collective action." *Id.*

### B.   PLAINTIFFS' INDIVIDUAL EXPERIENCES ARE VARIED

Plaintiffs have not alleged a common policy or practice, and significantly, their subjective experiences varied widely. As a result, certification of the proposed overbroad class would be improper. The testimony of the Plaintiffs establishes, beyond any doubt, that there are significant differences as it relates to individual meal break experiences because of specific managers, job duties, staffing, location of taking breaks, carrying of communications devices, and employees' own subjective experiences and choices, even within the same department.

Individualized differences among managers and putative class members alone is enough to overcome a finding of conditional certification in the Neenah ED, much less the entire ThedaCare hospital network. The three named Plaintiffs reported totally different experiences working with Fredriksen as they did with Bashaw. (See p. 5-12 above). The named Plaintiffs all acknowledged that they use the no lunch process under Fredriksen (and therefore they have no

- 23 -

claim for unpaid meal periods). Moreover, other employees in the Neenah ED state that they have used the no lunch code freely under both Fredriksen and Bashaw, and therefore they were not discouraged by Bashaw asking questions about why they used the no lunch code.[9] These differences are based entirely on individuals' own subjective experiences and their interpersonal relations with different managers.[10] As a result, there is no support for certification of employees in the Neenah ED, much less certification of a class of employees in all of ThedaCare's hospitals and all of its departments. *Hadley v. Journal Broadcast Group, Inc.*, 2012 WL 523752, at *4-5 (E.D. Wis. Feb. 16, 2012) ("each employee's own subjective interpretation of his supervisor's directive would require an individualized, rather than common, approach"); *see also Richardson v. Wells Fargo Bank, N.A.*, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) (denying conditional certification when "resolution of each Plaintiff's claim will require individualized inquiries about his or her specific managers' policies and practices.").

There are also significant differences in job duties that weigh against a finding of any common policy. Miller worked as a paramedic where she assisted in providing medical care to patients.[11] Miller is not similarly situated to employees who work in registration (i.e., registrars/administrative associates and URAs) who do not provide patient care and therefore the reasons why they might be interrupted have nothing to do with, for example, a patient's acuity. RNs in the EDs are not similarly situated to RNs in the Birth Center, who stated in their declarations that they "worked" through their breaks because they carried laptops during their

---

[9] ThedaCare asserts that there is no violation of wage and hour law where a manager asks questions about why an employee is using the no lunch; rather, that is good management. Because this argument runs to the merits of whether such a practice is lawful, ThedaCare will reserve its arguments for the appropriate time.

[10] Indeed, Albers said she started using the no lunch process only after her attorney told her too, without reporting anything to Fredriksen and receiving no pushback from Fredriksen whatsoever. (Albers Dep. Tr. 42-43, 66-67). This is an entirely individualized experience.

[11] ThedaCare does not even employ paramedics outside of its EDs.

- 24 -

lunches so that they could monitor babies' heartbeats. This is a specific allegation relating to a specific job duty in a specific department; it is not even a facility-wide policy or practice, much less an entity-wide practice. Paramedics, registrars and URAs are not similarly situated to Lead RNs, who in some departments are responsible for ensuring that other employees get their break. So too, paramedics, registrars, URAs and RNs are not similarly situated to the Staffing Resources employees, who sit several floors away, work in an office environment, have no involvement with patients and some of whom are merely preparing future schedules and are therefore not performing work that has any emergent component to it at all.

Similarly, there is no evidence that any of the Plaintiffs are similarly situated to the thousands of other jobs, such as technicians or other types of nurses who work in ThedaCare's many other departments (such as surgery, oncology, behavioral health, inpatient rehabilitation, outpatient rehabilitation, intensive care, cardiovascular services, post-anesthesia care unit, IV therapy, wound care and many more) that fall within the proposed class definition. There is no common unlawful policy or practice, and Plaintiffs cannot assume one based on manager/department specific practices, or because of their subjective experiences, or based their conclusory allegations. *See Hatton v. Cablecom, LLC,* 2015 WL 4113441 (E.D. Wis., July 8, 2015) (denying conditional certification sought by a class of cable installers where the plaintiff's declaration contained conclusory allegations about other cable installers' experiences and, therefore, they failed to identify a common policy or practice); *Zeheng v. Good Fortune Supermarket Group (USA), Inc.*, 2013 WL 5132023 (E.D. N.Y. Sept. 12, 2013) (denying conditional certification sought by a group of supermarket employees where their declarations included merely conclusory allegations that others were subject to similar treatment).

- 25 -

Where an employee chooses to take his or her 30 minute lunch also impacts the likelihood of whether they will be interrupted. (Compare p. 6 with p. 15-16 above). For example, Miller often chose to take her meal breaks in the break room near the Neenah ED. She chose to not eat in the cafeteria or elsewhere. Sometimes when the call light in the Neenah ED break room went off, Miller got annoyed with it and chose to cut her break short to respond to the call light (of course, Miller is entitled to use the no lunch in this situation). Other employees might not be annoyed by the call light and they may chose to not cut their break short or to let the employee covering for them handle the situation. Other employees choose to take their break in a quieter location, like the cafeteria or other break rooms, where there is no call light, and therefore they are less likely to experience any interruption at all. (Id.)

Use of communications devices also varies across the organization. Most employees working in the Neenah ED, including Miller, Auler and Albers, and the Staffing Resources employees, do not have access to or use a portable communication device while working. Other employees do use portable communication devices. Also, different departments have taken different steps to ensure that employees are getting their breaks, such as the Lunch Tracking Tool used by the Birth Center in Neenah (see p. 14-15 above) or the break room that the Neenah Staffing Resources department recent created (see p.13-14 above). These significant disparities impact meal break interruptions and these groups can not all be lumped together.

Personal decisions matter too. Plaintiffs Auler and Albers reported that they chose to cut their lunch periods short without telling anyone because they believed they were too busy; they admit no one instructed them to cut their lunch period short. (See p.9-10 above). Others might not feel this way; subjective choices are not common policies. *See Fernandez v. Wells Fargo Bank, N.A.*, 2013 WL4540521 (S.D. N.Y. August 28, 2013) (denying conditional certification of

a putative class of personal bankers who claimed their employer assigned them more work than could be performed in a 40 hour week which they claimed forced them to work off the clock because there was no "specific, concrete, management directive concerning plaintiffs' off-the-clock work or any purported requirement not to record hours worked").

Differences in staffing, which are determined by individual department managers, also result in no common policy or practice. Paramedics in the Neenah ED work in groups, paramedics in the Appleton ED work by themselves. (See p.16 above). Registrars on day shifts have a cover employee so that two registrars are working at the same time. (See p.10). These employees are expected to work collaboratively to cover for one another during their 30 minute lunch periods.[12] URAs work by themselves. (See p. 11-12). Staffing on a day-to-day basis also naturally depends on the number of individuals who show up for their scheduled shift and whether ThedaCare is able to find another employee to fill that person's slot. Thus, staffing is determined on a department specific basis, and can be impacted on a day-to-day and shift-by-shift basis, and it creates differences as it relates to whether an employee is able to take his or her 30 minute lunch period.

## IV. THE CASES RELIED ON BY PLAINTIFFS DO NOT SUPPORT THEIR OVERBROAD REQUEST

Plaintiffs argue that the Court should certify its proposed class because some other courts have certified cases involving automatic meal break deductions. (Plaintiff's Brief at 14-18). However, the cases that Plaintiffs rely upon are distinguishable and do not support their attempt to certify their overbroad, multi-facility, multi-department and multi-job proposed class.

---

[12] Albers has been criticized by her peers for not making herself available to enable lunches by others. (See p.10 above). This introduces yet another highly-specific factor into whether Albers is similarly situated to anyone, where she makes it difficult for others to obtain their 30 minute lunches.

QB\38791043.3

In *Brabazon*, the named plaintiffs sought and were granted conditional certification on behalf of a class of approximately 225 individuals who worked in the same department, held the same job title, were responsible for performing the same job duties and who were all required to carry portable communication devices during their meal breaks. *Brabazon*, 2011 WL 1131097, at *3. The differences are clear: Plaintiffs in the instant matter seek to certify a class of over 3,000 individuals, who work in many different roles, in many different departments, under many different supervisors and at many different facilities. *Brabazon* does not provide support for conditional certification of the proposed overbroad class in the instant matter.

In *Aguilera*, this Court conditionally certified a class of 138 housekeepers and 184 Certified Nursing Assistants at one hospital, but then decertified the case because there were different practices in the various departments relating to only those two job titles. *Compare Aguilera v. Waukesha Mem'l Hosp.*, Inc., 2014 WL 4080158 (E.D. Wis. Aug. 18, 2014) *with Aguilera v. Waukesha Mem'l Hosp., Inc.*, 2015 WL 3791469 (E.D. Wis. June 18, 2015). Those disparate practices included that not all CNAs or housekeepers were required to monitor their phones during meal periods, that some CNAs would "round" with their patients before taking a meal period so that the patient would be less likely to contact the CNA during the meal period, and that some units scheduled overlapping shifts to provide coverage for meal breaks, which minimized calls to those who were on break. *Aguilera*, 2015 WL 3791469 at *7-8. Thus, not only was the conditional class that was certified in *Aguilera* far more limited than the proposed class in the instant matter, but the very same differences (and many more) warranting decertification are present in the instant matter. *Id.*, *see also Valchl v. Dallas County Hospital Dist.*, 574 F.Supp. 2d 618, 622 (N.D. Texas) ("Courts have a responsibility to avoid the stirring

- 28 -

up of litigation through unwarranted solicitation via Court facilitated notice of putative collective action under FLSA where plaintiffs fail to demonstrate they are similarly situated to the class.").

Other cases relied upon by Plaintiffs are similarly distinguishable. *See, e.g., Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 2013 WL 3287634, at *4 (W.D. Wis. Mar. 21, 2013) (conditionally certifying a class that consisted of only one job title at one hospital <u>noting that courts often refuse to conditionally certify classes that span multiple facilities</u>); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852 (N.D. Ill. 2013) (conditionally certifying a narrower class than sought by plaintiffs where the employer maintained a rounding policy that could have been applied unlawfully); *DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510905, at *4 (N.D. Ill. Aug. 10, 2011) (certifying a much narrower subgroup than originally sought).

The cases cited by the Plaintiffs do not support their overbroad request. Granting conditional certification will most certainly expand the vast number of differences already present with only a handful of Plaintiffs (which is an extremely expensive and time consuming endeavor to defend). It also sets in motion the potential for granting a windfall to employees who actually took 30 minute lunch periods should they be compensated retroactively even though they were completely relieved of duty.

## V.     PLAINTIFFS' RELIANCE ON WISCONSIN LAW IS MISPLACED

Plaintiffs argue, without citation, that a violation of Wisconsin law can give rise to a violation of the FLSA. This claim is baseless. While Wisconsin meal break law is nearly identical to the FLSA,[13] Wisconsin's administrative regulations add a location restriction which states "[a]ny meal period where the employee is not free to leave the premises of the employer will also be considered an "on duty" meal period." Wis. Admin. Code DWD § 272.04(1)(c).

---

[13] *Compare* Wis. Admin. Code DWD § 272.12(2)(c)(2) *with* 29 C.F.R. § 785.19(a).

As established above, employees are permitted to leave the premises during their 30 minute lunch periods, and many have. Even if the Court assumes that employees were not free to leave the premises, which assumption is not supported by the evidence, Wisconsin's administrative regulations do not give rise to an FLSA violation, and cannot be the basis upon which a federal FLSA class is conditionally certified. *See* 29 C.F.R. § 785.19 ("It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period."); *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108 (W.D. Wis. Apr. 11, 2011) (FLSA requires only payment of minimum wages and overtime wages, nothing in the FLSA creates a cause of action for diminished overall compensation under state law). Indeed, ThedaCare is a non-profit entity <u>and is therefore not even subject to Wisconsin state law overtime.</u> (See Dkt. 19 at Affirmative Defense No. 3, citing Wis. Admin. DWD § 274.015). Thus, whether employees are free to leave the premises -- which they are -- is a red herring and provides no basis for certifying an FLSA class.

## VI.   ISSUES REGARDING PLAINTIFFS' PROPOSED NOTICE

If the Court does permit conditional certification of a class in this matter, ThedaCare objects to the long period of time (60 days) for putative class members to opt-in. Instead, ThedaCare proposes a 45-day deadline for putative Plaintiffs to opt-in, which is consistent with the time period ordered by courts in this district. *Aguilera*, 2014 WL 4080158, at *6 (45 day opt-in period); *Williams v. Cargill Meat Sols. Corp.*, 2010 WL 2643405, at *2 (E.D. Wis. June 30, 2010) (ordering 45-day opt-in period where 60 days was requested by plaintiff).

## <u>CONCLUSION</u>

This case is nearly a year old and the parties have already engaged in significant discovery. No amount of further discovery is going to unearth any common unlawful policy where there are already so many differences with only a handful of Plaintiffs. For the foregoing

- 30 -

reasons, ThedaCare asks this Court to deny Plaintiffs' Motion for Conditional FLSA Class Certification and to dismiss the opt-in Plaintiffs. *See Botero v. Commonwealth Limousine Serv. Inc.*, 302 F.R.D. 285, 286 (D. Mass. 2014) (FLSA opt-in plaintiffs are no longer part of the case where conditional certification motion was denied); *Prescott v. Prudential Ins. Co.*, 729 F.Supp.2d 357, 370 (D. Me. 2010) (noting that if an FLSA conditionally certified class was subsequently decertified, any "opt-in" plaintiffs would be dismissed without prejudice).

Dated:  March 14, 2016

QUARLES & BRADY LLP

s/ Christopher L. Nickels
Sean M. Scullen, State Bar No. 1034221
sean.scullen@quarles.com
Christopher L. Nickels, State Bar No. 1083481
christopher.nickels@quarles.com
411 East Wisconsin Avenue, Suite 2350
Milwaukee, WI  53202-4426
414.277.5000

Attorneys for Defendant, ThedaCare, Inc.

- 31 -