UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUELAINE MILLER, et al,

    Plaintiffs,

 v.              Case No. 15-C-506

THEDACARE INC.,

    Defendant.

**DECISION AND ORDER GRANTING CONDITIONAL
CERTIFICATION IN PART AND NOTICE TO POTENTIAL
FAIR LABOR STANDARDS ACT PLAINTIFFS**

  Plaintiffs Juelaine Miller, Kathleen Albers, and Linda Auler were or are employed by Defendant ThedaCare, Inc., on an hourly basis at Defendant ThedaCare's Appleton Medical Center ("AMC") or Theda Clark Medical Center ("Theda Clark"). ThedaCare operates a healthcare system of hospitals and medical clinics in northeastern Wisconsin. Plaintiffs allege that ThedaCare violated their rights under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (FLSA) and the Wisconsin wage law, Wis. Stat. § 109.01, *et seq.*, by not compensating hourly workers for all work performed and not compensating hourly employees for overtime. More specifically, Plaintiffs allege that Theda Clark maintains a policy that, among other things, contains an automatic deduction for unpaid meal periods while requiring employees to be "on-duty" or "on-call" during such periods and failing to pay employees for work during those periods. *See* Second Am. Compl. ¶ 2. By its terms or, alternatively, as applied, Plaintiffs claim that ThedaCare's policy deprives them of compensation for lunch breaks during which they perform work.

Before me now is Plaintiffs' motion for conditional certification and court-authorized notice of their claim. As part of this motion, Plaintiffs request that this Court: (1) conditionally certify the proposed collective action pursuant to 29 U.S.C. § 216(b); (2) approve the Proposed Notice; (3) direct ThedaCare to produce the names and other information regarding all potential class members employed at ThedaCare's facilities; and (4) allow a sixty day opt-in period from the date of the mailing of the notice. Also before me is Plaintiffs' motion for leave to amend the complaint. For the reasons that follow, Plaintiffs' motion for leave to amend will be granted and Plaintiffs' motion for conditional class certification and court-facilitated notice and discovery will be granted in part.

## BACKGROUND

There are three named plaintiffs in this lawsuit: Kathy Albers, Linda Auler, and Juelaine Miller. Kathy Albers works as a unit resource associate/administrative associate at Theda Clark and AMC. Linda Auler works as an administrative associate at Theda Clark. Juelaine Miller works as a paramedic at Theda Clark and AMC. Additionally, nineteen other individuals have consented to join as FLSA opt-ins. Together, the named and opt-in plaintiffs all work or have worked at either AMC or Theda Clark or both.

ThedaCare operates a healthcare system of seven hospitals and approximately thirty-seven medical clinics in northeast Wisconsin. In ThedaCare's hospitals, employees work in dozens of different departments (i.e., emergency medicine, surgery, oncology, behavioral health, inpatient/outpatient rehabilitation, birthing and many more). Over the past three years those departments have been managed and supervised by hundreds of different individuals. ThedaCare employs approximately 3,000 nurses, paramedics, certified nursing assistants ("CNAs"), and other hourly employees who provide direct patient care at its hospitals, in addition to approximately 100

2

additional hourly employees who work as registrars/administrative associates, unit resource associates, or hourly employees within the Staffing Resources department.

ThedaCare pays its non-exempt direct care providers, administrative associates, unit resource associates, and schedulers on an hourly basis. During the three years prior to the filing of this lawsuit, ThedaCare had employee pay and break policies which were uniformly applied to employees at each of its hospitals.[1] One of ThedaCare's uniform policies is entitled: "Pay: General Information And Employee Responsibilities" and is applicable at "All Locations." ECF No. 33-4 at 10. This general policy includes a "Breaks and Lunches" section which states:

> As a general practice, employees are scheduled for a half hour lunch. Breaks are discretionary and are subject to the pressures of the daily workload. Managers and supervisors are responsible for the scheduling of breaks and lunches. See the separate policy on Breaks and Lunches for more information.

*Id.* at 11. The separate "Breaks and Lunches" policy referenced above applies to "All Locations" and provides additional detail about ThedaCare's policy on lunches and breaks. Wilcox Exhs. 3 & 4, ECF No. 33-5. Regarding lunches, the policy states:

> As a general practice, employees who work at least a 6 hour shift are scheduled for a half-hour unpaid lunch. This half-hour will be deducted by the time and attendance system. . . . If employees' shift length qualifies them for an unpaid lunch break that they are required to forego, employees must record a "no lunch" entry in accordance with the site's timekeeping procedures. Managers or their designee are responsible for oversight and approval of "no lunch" situations.

*Id.* The policy then goes on to discuss 15 minute paid breaks, which are "discretionary and are subject to the pressures of the daily workload." *Id.* The policy specifically states that "[e]mployees may not leave the premises during a break." *Id.*

---

[1] Though the parties are somewhat equivocal on this point, it appears that ThedaCare's Shawano hospital used a more traditional punch-out/punch-in lunches policy and the Berlin and Wild Rose hospitals have only been ThedaCare hospitals since January 1, 2015. Nevertheless, the remaining hospitals appeared to follow the umbrella corporate lunches and breaks policy.

3

After explaining break rules, the policy proceeds to discuss breaks and lunches generally:

> The employee should exercise discretion in taking breaks and lunches in such a way that both the needs of the employee and the needs of the organization are met. In some work areas, managers or their designees may designate breaks. However, patient load along with professional practice and team collaboration, generally determines the practicality of breaks.

*Id.* The policy goes on to proscribe combining a break with lunch, with another break, or the beginning or close of the work day. Though the policy specifically prohibits going off the premises during breaks, the policy allows employees to leave the premises for lunches so long as they properly record the time away: "Generally, employees are not required to record the lunch period if they remain on the premises. However, if an employee leaves the premises, the lunch period must be recorded using the appropriate record keeping method for the site (i.e., time clock, manual timecard, etc.)." *Id.* Finally, the policy states that conflicts regarding breaks should be brought to the employee's manager, along with any questions or concerns regarding the overall policy. *Id.*

Plaintiffs filed this lawsuit on April 29, 2015. Nearly ten months later, on February 19, 2016, Plaintiffs filed the present motion for conditional class certification and notice. Prior to the filing of the present motion, the parties engaged in significant discovery, including: ThedaCare's production of over 7,000 pages of documents, the depositions of all named Plaintiffs, and the deposition of two of ThedaCare's corporate representatives. Plaintiffs presently seek conditional certification of a class of similarly situated employees defined as:

> All persons who have been or are employed by a ThedaCare hospital on an hourly basis as direct patient care providers, administrative associates, unit resource associates and employees of the Staffing Resources department basis [sic] at any time three years prior to the commencement of this lawsuit to the present whose scheduled hours included an automatic deduction for unpaid meal breaks and who were denied minimum wage or overtime wages for hours for compensable "on call" time and/or hours performing work during unpaid meal periods.

4

Pls.' Br. in Supp. 3–4, ECF No. 32. The parties have filed numerous affidavits and declarations of ThedaCare employees along with the briefing on the present motions.

## ANALYSIS

**I.      Conditional Certification**

The FLSA permits collective action "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Employees or former employees must give their consent in writing to become a party to a collective action brought pursuant to § 216(b). Therefore, unlike a typical class action suit under Fed. R. Civ. P. 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires employees or former employees to "opt in" to the class. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982). FLSA collective actions also differ from Rule 23 class actions in that Rule 23 sets forth a set of detailed procedural provisions that have no counterpart in the FLSA. *Epenscheid v. DirectStat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). But despite these differences between the two, "there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." *Id.*

District courts may, in their discretion, facilitate notice to potential plaintiffs to a FLSA collective action, to implement this "opt in" procedure. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580; *DeKeyser v. Thyssenkrupp Waupaca Inc.*, No. 08-C-488, 2008 WL 5263750, *2 (E.D. Wis. Dec. 18, 2008). "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the

potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). Generally, in order to determine whether the representative plaintiffs are "similarly situated" to potential opt-in plaintiffs, this Court follows a two-step certification approach. *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, *3, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008).

First, the court must determine whether to conditionally certify the class by examining whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. *Id.* at *3. At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." *Id.* at *4. Plaintiffs may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff[s] and the proposed class or a common policy that affects all the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). It is a lenient standard, but the conditional certification stage is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. This is because "a plaintiff's discovery demands upon conditional certification may impose a 'tremendous financial burden to the employer'" and therefore, courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset. *Id.* at *4 (quoting *Woods*, 686 F.2d at 581). If the class is conditionally certified, notice may be sent to other potential class members and discovery may proceed.

At step two, typically on a defendant's motion for decertification, the court must determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). At the second stage, the court will assess whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *Hoffmann-La Roche*, 493 U.S. at 170.

6

But where the parties have engaged in substantial discovery prior to the request for conditional class certification, a higher standard of review may be merited. *Boelk v. AT & T Teleholdings, Inc.*, No. 12-CV-40-BBC, 2013 WL 261265, at *14 (W.D. Wis. Jan. 10, 2013) (noting that where significant discovery had been performed " it is appropriate to apply more scrutiny to plaintiffs' claim than would normally be applied at the conditional certification stage"). "When a plaintiff seeks conditional certification of a FLSA class after significant discovery, the court can 'collapse the two stages of the analysis and deny certification outright.'" *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012) (quoting *Purdham v. Fairfax County Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)). At least one court has held that such an "intermediate standard" of scrutiny would be inappropriate where a defendant has not provided a list of employees at its other locations. *Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, 2013 WL 4049542, at *4 (W.D. Wis. Aug. 9, 2013).

**A. Policy Lawful on its Face**

Plaintiffs argue that ThedaCare's breaks and lunches policy, on its face, is unlawful and applied equally to all members of the proposed class. As an initial matter, it would be irrelevant whether this Court applies an "intermediate" or "lenient" standard on Plaintiffs' certification claim if ThedaCare's breaks and lunches policy is unlawful on its face. Under either standard a uniform policy that is necessarily unlawful would merit conditional class certification as each employee of ThedaCare would be equally subject to the unlawful policy and, therefore, would be similarly situated for the purposes of the FLSA. In contrast, if the breaks and lunches policy may be (but is not necessarily) *applied* unlawfully by different managers or in different locations, this Court's choice of standard would likely control the outcome of this motion.

ThedaCare's lunch and breaks policy is not unlawful on its face. As other courts have found, automatic deduction policies are legal and insufficient, standing alone, to permit a collective action. *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009); *see Brabazon v. Aurora Health Care, Inc.*, 2011 WL 1131097, at *3 (E.D. Wis. Mar. 28, 2011) ("The court agrees that simple allegations of the existence and implementation of a practice of making automatic deductions for scheduled meal breaks in and of itself is not 'sufficient as a common denominator to permit a collective action.'") (quoting *Fengler*, 595 F. Supp. 2d at 195). A policy such as ThedaCare's, which allows employees to use the "no lunch" punch when they are unable to take a full 30 minute lunch break, provides a mechanism to prevent employees from having pay automatically deducted for time they were really working. Though ThedaCare managers have the right to cancel a "no lunch" punch, such a safeguard is reasonably oriented to ensuring that employees do not abuse the "no lunch" punch system and does not render the whole system unlawful. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process.").

Contrary to Plaintiffs contentions, the ThedaCare lunch and breaks policy does not prohibit employees from leaving the premises during their unpaid lunch period. The policy explicitly includes instructions for leaving the premises during lunches. Instead, the policy prohibits leaving the premises during *paid* breaks. Furthermore, the FLSA does not require that employees be allowed to leave the premises during unpaid lunch breaks. 29 C.F.R. § 785.19(b) ("It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.").

8

Plaintiffs' next concern about ThedaCare's breaks and lunch policy is that it requires employees to be "on duty" throughout their lunch period. Pls.' Br. In Supp. 20, ECF No. 32 ("ThedaCare's written policy makes all employees remain on-duty during their 'unpaid lunch breaks' by preventing employees from leaving the premises and making them subject to recall to duty during the breaks."). Plaintiffs are correct that employees "must be completely relieved from duty" during unpaid meal times. 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime . . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."). But nothing about ThedaCare's plan as written requires employees to continue in their responsibilities during their unpaid lunch breaks. Wilcox Exhs. 3 & 4, ECF No. 33-5. Further, ThedaCare's policy, at least on its face, does not even require that employees be "on duty" during their lunches. Rather, ThedaCare's policy mostly enshrines common sense principles: "[t]he employee should exercise discretion in taking breaks and lunches in such a way that both the needs of the employee and the needs of the organization are met." *Id.* In other words, employees should take lunch at a time that works best for everybody. This directive is sensible (and probably essential) given that Plaintiffs work in a hospital setting where the need to provide medical care or treatment can arise without forewarning.

Plaintiffs also point to other aspects of the breaks and lunches policy to support the proposition that the policy is unlawful on its face. For example, Plaintiffs quote the policy language that requires employees to "forego the break, or be called from a break, if the demands of duty require it" and that "if the employee is leaving the department, the employee should let his/her supervisor know where to reach them should there be a need." *Id.* But these requirements apply to "breaks" not "lunches," as is plain from the language and structure of the policy. The policy itself uses the term "breaks" and the quoted discussion comes in the paragraph discussing 15 minute paid

9

"breaks." Yet even if these policies did apply to employee lunches, the policy would still not be rendered unlawful on its face. None of the language requires the employees to perform their duties during breaks or lunches and employers are allowed to interrupt lunches—so long as the employee is paid for that lunch period.

None of this is to say that ThedaCare's policy cannot be applied in a way that unlawfully requires employees to work during unpaid lunch periods. That issue will be discussed below. I conclude, however, that ThedaCare's policy does not—on its face—violate the law. Therefore, it will be necessary to decide which standard is appropriate in deciding Plaintiffs' request for conditional class certification.

**B. Post-Discovery Conditional Class Certification Requests**

Generally, the standard for granting a request for conditional class certification is "fairly lenient," *Aguilera v. Waukesha Mem'l Hosp., Inc.*, No. 13-C-1245, 2014 WL 4080158, at *3 (E.D. Wis. Aug. 18, 2014), only requiring evidence sufficient for the court to make a "reasonable inference" that the plaintiffs are similarly situated to proposed class members. *Bredbenner v. Liberty Travel, Inc.*, No. CIV. 09-CV-00905WJMM, 2009 WL 2391279, at *1 (D.N.J. July 31, 2009). However, where the parties have engaged in some discovery prior to the motion for conditional certification, a higher standard of review may be applied. *Boelk*, 2013 WL 261265 at *14; *see Purdham*, 629 F. Supp. 2d at 547 ("When sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, however, a court can collapse the two stages of the analysis and deny certification outright."). At least one court in the Seventh Circuit has described this standard as an "intermediate level of scrutiny." *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012). A higher level of scrutiny is merited for cases where significant

discovery has taken place because there is a reduced need for notice and basic discovery on the question of whether the plaintiffs are similarly situated to the proposed class members.

*Hawkins v. Alorica* involved a group of customer service representatives (CSRs) who sought conditional class certifications for two FLSA collective actions. 287 F.R.D. at 435. First, the CSRs claimed that their employer's policy resulted in them being unpaid for pre- and post-shift work. *Id.* Second, the CSRs claimed that they were not being paid for break time. *Id.* at 437. In determining what standard to apply in deciding the motion for conditional class certification, the court stated that "[w]hen a plaintiff seeks conditional certification of a FLSA class after significant discovery, the court can 'collapse the two stages of the analysis and deny certification outright.'" *Id.* at 439. The court also noted that in briefing the conditional certification motion the parties relied on fifteen declarations, excerpts from ten depositions (including some of depositions of the defendant's 30(b)(6) witness), and over 6,000 pages of exchanged documents. *Id.* at 439 n.3. Given the scope of the record, the court decided that "substantial discovery" had taken place and that an intermediate level of scrutiny should be applied. *Id.* at 439. The court ultimately granted the conditional class certification as to the break time claim and denied conditional certification as to the pre- and post-shift claim. *Id.* at 449.

Similarly, in *Boelk v. AT & T Teleholdings, Inc.*, a group of AT&T employees sought conditional certification of a FLSA collective action for unpaid meal breaks. 2013 WL 261265 at *1. In discussing the appropriate level of scrutiny to be applied to the plaintiff's motion, the court noted that plaintiffs are normally only required to make a modest factual showing. *Id.* at 14. But the court reasoned that "the primary purpose of the two-stage process is to allow the parties to conduct discovery on the issue whether plaintiffs are similarly situated to class members." *Id.* at *14. With that purpose in mind, the court reviewed the record before the court, which included:

11

"several declarations from field technicians, depositions of all six named plaintiffs, depositions of two individuals who consented to opt in should a class be certified, and a Fed. R. Civ. P. 30(b)(6) deposition by plaintiffs." *Id.* Given the underlying purpose of the two-stage process and the "significant discovery" that had taken place, the court determined that it was "appropriate to apply more scrutiny to plaintiffs' claim than would normally be applied at the conditional certification stage." *Id.* The court ultimately concluded that the record failed to establish "that [the] plaintiffs and potential class members were victims of a common policy or plan" because the "plaintiffs' experiences with the meal break restrictions were not common and varied depending on their individual practices and particular supervisor." *Id.* at *14–15.

In the present case, the parties engaged in substantial discovery prior to Plaintiffs' motion for conditional class certification. Almost ten months passed between the filing of the complaint in this action and the present motion. (ECF Nos. 1 & 31). ThedaCare has produced over 7,000 pages of documents and the parties have deposed all named Plaintiffs and two of ThedaCare's corporate representatives. The record contains numerous affidavits and declarations by ThedaCare employees—including some who have opted in to the proposed class and other who have not. Given this broad record, I find that an intermediate standard will be appropriate in this case. *See Hawkins*, 287 F.R.D. at 435.

Plaintiffs argue that it would be inappropriate for this court to apply an intermediate standard because ThedaCare has not provided a list of other potential members of the class. In support of this argument, Plaintiffs cite *Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, 2013 WL 4049542, at *4 (W.D. Wis. Aug. 9, 2013). The *Freeman* court stated:

> Plaintiffs have had limited discovery, deposing two of defendants' corporate representatives and some of defendants' employee witnesses. Notably, they have not been permitted discovery into the matters that are most useful to establishing

12

> conditional certification—access to a list of fellow employees at other locations. Therefore, an intermediate standard is inappropriate at this stage.

*Id. See also Renfro v. Spartan Comp. Servs., Inc.*, 243 F.R.D. 431, 434 n.4 (D. Kan. 2007) ("[T]he Court is not inclined to apply the heightened second stage certification analysis on the minimal amount of discovery before it."). As a preliminary matter, the holding of the *Freeman* court is not binding on this Court. *Wirtz v. City of S. Bend*, 669 F.3d 860, 863 (7th Cir. 2012) ("A district court decision does not have precedential effect . . . that is, it is not an authority, having force independent of its reasoning."). Furthermore, the logic of the *Freeman* decision depends on the premise that Plaintiffs had engaged in only limited discovery, with the absence of the employee list being a single and notable feature. In contrast, the parties in the present case have engaged in substantial discovery.

Stated differently, a review of the relevant district court decisions in this Circuit reveals that the decision of whether to apply an "intermediate" standard or traditional "lenient" standard depends largely on where the case is on the spectrum of overall discovery. Where less discovery has been performed, a court should apply a lower standard of review to give the Plaintiffs an opportunity to prove that they are similarly situated to the members of the proposed class. Where more discovery has been performed and a robust record exists, courts will often have the information necessary to make a confident decision on whether conditional certification is appropriate. Whether the plaintiffs have had the opportunity to review a list of the defendant's employees is one relevant question in determining the depth of discovery completed. *Freeman*, 2013 WL 4049542, at *4. Obviously such a release of information—which in cases like the instant one could prove extremely burdensome to the defendant—will result in the case being further along in discovery. But such a release is not necessary before a court applies an "intermediate" standard in what is largely a case-specific

13

determination. Rather, courts should view the release (or failure to release) of an employee list alongside other factors including: length of discovery, amount and kind of documents exchanged, number of depositions taken, and the extent other factual material has been made a part of the record.

### C. Similarly Situated

At the outset, Plaintiffs' claim that they are similarly situated with the members of the proposed class faces a difficult obstacle—the sheer expanse of the proposed class. During the relevant period, the thousands of members in the proposed class worked in seven different hospitals, in dozens of departments, with and without direct-patient contact, performing varied functions, under varying levels of pressure, and (critically) under the management of hundreds of different individuals. *See Howard v. Securitas Sec. Servs., USA Inc.*, 2009 WL 140126, at *6 (N.D. Ill. Jan. 20, 2009) ("To be sure, district courts have determined that conditional certification is inappropriate where the plaintiff could not show that the same policies and procedures were followed at other offices or branches of a company."); *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *10 (W.D.N.C. Sept. 16, 2011) (denying conditional class certification where "the record before the court demonstrates that there is no common policy or scheme and instead individualized questions of fact predominate"). Plaintiffs attempt to stitch together this broad network of employees by pointing out that they are all under ThedaCare's breaks and lunches policy. However, as noted above, there is nothing *per se* unlawful about ThedaCare's Policy. Thus, in order to show that Plaintiffs are similarly situated to the proposed class members, Plaintiffs must demonstrate that the policies are applied in a manner that requires employees "to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes." 29 C.F.R. § 785.17. Plaintiffs implicitly concede

14

in their reply brief that they are only able to make such a showing for the AMC and Theda Clark hospital locations. Pls.' Reply Br. In Supp. 9, ECF No. 57.

I find that Plaintiffs have made an adequate showing that they are similarly situated with proposed class members at AMC and Theda Clark to warrant conditional class certification. Other courts have similarly tailored classes in managing class size and deciding who has been shown to be similarly situated. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013) (granting conditional class certification but limiting to employees with direct patient care); *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009) (same). Plaintiffs have submitted sufficient evidence to expose a culture of denying employees a 30-minute uninterrupted lunch at Theda Clark and AMC. *See DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510905, at *3 (N.D. Ill. Aug. 10, 2011). The named plaintiffs and opt-in class members have described being expected to consistently perform work duties during unpaid lunch periods and being required to respond to the needs of patients. Plaintiffs set forth multiple accounts of ThedaCare managers being aware that employees were working through their unpaid lunch breaks and supervisors discouraging employees from using the "no lunch" punch. *See* Pls.' Reply Br. In Supp. 11, ECF No. 57 (compiling depositions and affidavits). Furthermore, Plaintiffs have explained that ThedaCare managers gave conflicting messages on the importance of taking lunches, resulting in employees not complaining about taking their lunches. *Id.* However, as Plaintiffs implicitly concede, these showings largely relate specifically to the AMC and Theda Clark facilities, and are insufficient to give rise to an inference that these policies existed across ThedaCare's network.

In addition to objecting to the overbroad scope of the proposed conditional class, ThedaCare also argues that the Plaintiffs' individual experiences are too varied to merit a finding that the members of the proposed class are similarly situated to Plaintiffs. ThedaCare argues that there are

15

"significant differences as it relates to individual meal break experiences because of specific managers, job duties, staffing, location of taking breaks, carrying of communications devices, and employees' own subjective experiences and choices, even within the same department." Def.'s Br. In Opp. 23, ECF No. 49. ThedaCare is correct that individualized differences may result in denial of a conditional class certification motion. *See Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 569 (N.D. Ala. 1995), *aff'd sub nom. Brooks v. Bellsouth*, 114 F.3d 1202 (11th Cir. 1997) ("The above facts indicate that the circumstances of employment termination are diverse and that the court, if plaintiff's suggested class were certified, would be faced with numerous individualized defenses"). Furthermore, ThedaCare has placed some evidence on the record that would cast doubt on the proposition that ThedaCare's policy is being applied unlawfully. *See* Dec of Selwitschka, ECF No. 56-5. The experience of some of ThedaCare's employees indicates that employees who simply refuse to work during lunches or liberally use no lunch punches face no opposition from managers. *See* Rohloff Decl., ECF No. 56-1. Indeed, as discussed above, ThedaCare's policy puts the onus on employees to use the no-lunch punch and on managers to facilitate coordination so that lunches can be taken. These circumstances could potentially lead to radically individualized questions of fact that would not be fitting for class certification.

But such a searching review is not appropriate even under the "intermediate" standard of review at this stage of the case. Plaintiffs have not had the opportunity to depose and rebut many of the individuals whose declarations have been filed by ThedaCare. Additionally, the problems raised by the individualized situations will be greatly ameliorated by the limited scope of the conditional class certification. The varied practices of the other hospitals will not be an issue in the conditional class, there will be fewer putative class members, and fewer managers' actions will be questioned. ThedaCare will also be free to seek decertification in the future should further

16

discovery result in greater doubts as to whether Plaintiffs are similarly situated with other class members. *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009). Indeed, even under the more limited class I am conditionally certifying, Plaintiffs will face a number of hurdles in showing that they are similarly situated, such as the practice of different managers and the difference between the varied positions.

**II.    Wisconsin Law**

Plaintiffs argue that Wisconsin Law gives rise to a violation under the FLSA. Under Wisconsin Law, "[a]ny meal period where the employee is not free to leave the premises of the employer will also be considered an 'on duty' meal period." Wis. Admin. Code DWD § 272.04(1)(c). However, as discussed above, the ThedaCare breaks and lunches policy does not require ThedaCare employees to remain on their work premises during their lunches. Additionally, it is far from clear that a violation of this state law could trigger liability under the FLSA. *See Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *12 (W.D. Wis. Apr. 11, 2011). Therefore, Plaintiffs state law arguments do not warrant conditional class certification.

**III.   Notice**

Along with their brief in support of conditional certification, Plaintiffs have submitted a proposed notice form. District courts have discretion to implement the opt-in provision of § 216(b) by facilitating or modifying the notice to potential plaintiffs. *Hoffman-Laroche*, 493 U.S. at 169. "Once a section 16(b) action is commenced, the defendant has a vital interest in, and the court a managerial responsibility regarding, the joinder of additional parties plaintiff." *Woods*, 686 F.2d at 580. However, "courts must be scrupulous to respect judicial neutrality" and to avoid "even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. ThedaCare objects to the long period of time (60 days) for putative class members to opt-in and proposes a 45-day

17

deadline. Plaintiffs and Defendant each cite cases in support of their preferred period of time. Given the narrow scope of the conditional certification, I find that a 45-day deadline for putative Plaintiffs to opt-in is reasonable. *Aguilera*, 2014 WL 4080158, at *6.

## IV. Second Amended Complaint

Plaintiffs have also filed a motion for leave to file a second amended complaint. Fed. R. Civ. P. 15(a)(2). Plaintiffs seek to amend the complaint to clarify the proposed scope and amend the supporting allegations. ECF No. 29. Defendant does not oppose Plaintiffs' motion for leave to amend. ECF No. 55. Given Defendant's written consent, Plaintiffs' motion for leave to amend will be granted.

## CONCLUSION

**THEREFORE IT IS ORDERED** that Plaintiffs' motion for conditional certification is **GRANTED IN PART** with respect to the following putative class:

> All persons who have been or are employed by ThedaCare at the Appleton Medical Center or Theda Clark Medical Center hospitals on an hourly basis as direct patient care providers, administrative associates, unit resource associates and employees of the Staffing Resources department at any time three years prior to the commencement of this lawsuit to the present whose scheduled hours included an automatic deduction for unpaid meal breaks and who were denied minimum wage or overtime wages for hours for compensable "oncall" time and/or hours performing work during unpaid meal periods.

**IT IS ALSO ORDERED** that within 10 days of the date of this order Defendant will produce to Plaintiffs, in a computer-readable format, a list of all employees falling into the aforementioned category, including each employee's name, current or last known address, dates of employment, and position(s) held.

18

**IT IS ALSO ORDERED** that Plaintiffs are authorized to give notice of this lawsuit to all potential plaintiffs in the case. Plaintiffs shall modify the proposed notice to conform with the scope of the conditional certification and the ordered (45 day) deadline. Such notice may be sent once via first class mail to the conditionally-certified class, and there will be a 45 day opt-in period following the mailing of the notices.

**IT IS ALSO ORDERED** that Plaintiffs' motion for leave to amend is **GRANTED**. The Clerk is directed to set this matter on the Court's calendar for a telephone conference to address further scheduling.

Dated this   29th   day of August, 2016.

                                       s/ William C. Griesbach
                                       William C. Griesbach, Chief Judge
                                       United States District Court